IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **MICHELLE CHIANCONE,** | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | No. 20-cv-4857 |
| **BAYADA HOME HEALTH CARE, INC.,** | : | |
| *Defendant.* | : | |

Goldberg, J.                                                                                                      April 21, 2022

## MEMORANDUM OPINION

Plaintiff Michelle Chiancone ("Plaintiff") filed this lawsuit against Defendant Bayada Home Health Care, Inc. ("Defendant" or "Bayada"), a home health services facility. Plaintiff, a former employee of Bayada, brings claims for wrongful termination (count one), and a violation of the Pennsylvania Whistleblower Law, 43 Pa. Stat. § 1421 et seq. (count two) in connection with her termination in April of 2020. Bayada has filed a motion to dismiss the Complaint in its entirety. For the following reasons, I will grant the motion in part and deny it in part.

### I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff began working at Bayada on March 29, 2019 as a nurse providing hospice services and palliative care. (Compl. at ¶¶ 24–25, ECF No. 1.) Plaintiff alleges that when the COVID-19 pandemic began in March of 2020, she observed practices at Bayada that she believed to be illegal and not compliant with applicable health and safety directives. Specifically, Plaintiff alleges:

---

[1]     The following facts are taken from the Complaint and will be viewed in the light most favorable to Plaintiff. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

1

- Bayada did not provide its employees with adequate personal protective equipment. Instead, Bayada only provided employees with three (3) masks that were not N-95 masks, gloves, and hand sanitizer. Bayada also kept their supply closets locked.

- Bayada instructed its employees to only wear their provided masks when treating certain patients, even though each house the employees visited posed a risk of exposure to COVID-19.

- At some point, an employee at Bayada contracted COVID-19 "after being directed to treat a patient whose wife informed Bayada that she was very sick, and who ultimately did test positive for [COVID-19] herself."

- After learning that the employee tested positive for COVID-19, Bayada sent out an email "instructing the nursing staff not to alert their patients or the family members of patients that a staff member had been exposed to [COVID-19]."

- After seeing that email, Plaintiff complained to her supervisor, Christopher Fein, about Bayada's "improper response to the pandemic" and her "discomfort with being asked to engage in such unlawful and/or unethical behavior." She also told Mr. Fein that she was uncomfortable treating patients who had been exposed to COVID-19 due to Bayada's failure to provide adequate personal protective equipment to its staff.

- Mr. Fein told Plaintiff that she did not have a choice which patients she treated, and that if she refused to see patients who had COVID-19, she would need to use her paid time off to do so.

- Plaintiff became ill on April 3, 2020 and called out sick until April 5. She was terminated two days later, on April 7.

- Bayada's purported reasons for terminating Plaintiff were: (1) she refused to see patients; (2) patients had complained about her; and (3) she tried to get someone to falsify a patient death certificate.

(Compl. at ¶¶ 24, 25, 29, 33-39, 41-47, 49, 53, 55.)

## II.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility

2

standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, . . . assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### III. DISCUSSION

#### A. Wrongful Termination Claim

Employment in Pennsylvania is presumed to be at-will. McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 286 (Pa. 2000). An employee in Pennsylvania can therefore be terminated for "any or no reason." Raines v. Gaverford College, 849 F. Supp. 1009, 1011 (E.D. Pa. 1994) (citing Ruzicki v. Catholic Cemeteries, Inc., 640 A.2d 495, 497 (Pa. 1992)). An exception to this rule exists, however, when the termination violates public policy. Tanay v. Encore Healthcare, LLC, 810 F. Supp. 2d 734, 737 (E.D. Pa. 2011). The public policy exception to the at-will employment rule has been applied by courts when an employer: (1) requires an employee

3

to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; or (3) discharges an employee when specifically prohibited from doing so by statute. Id. "To state a cause of action under the public policy exception to the at-will employment doctrine, a plaintiff must point to a 'clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision.'" Id. (quoting Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 175 (Pa. Super. 1996)).

In essence, Plaintiff must plead that Bayada either affirmatively required her to break the law or forbid her from doing something she was required to do by law. Plaintiff points to the following federal and state statutes and regulations as potential bases for her wrongful termination claim:

> CMS regulations and guidance, the Occupational Safety and Health Act, Section 308(a) of the MCARE Act, 40 P.S. § 1303.308 (Reporting and Notification), 18 U.S. Code § 1001 (Fraud and False Statements), 18 U.S. Code § 1035 (False Statements relating to Health Care Matters), Chapter 28, Title 27 of the Pennsylvania Code (Communicable and Noncommunicable Diseases), federal terrorism laws, and violations of Pennsylvania common law, including, among other things, tortious negligence, fraud and/or intentional misrepresentation.

(Compl. at ¶ 70.)

### 1. The MCARE Act

Section 308 of the MCARE Act, entitled "Reporting and Notification," requires health care workers to report "a serious event or incident" if it jeopardizes patient safety. 40 P.S. § 1303.308(a). Section 308(c) provides anti-retaliation protections to health care workers who make such reports. Id. Bayada argues that Plaintiff cannot base her wrongful termination claim on a violation of MCARE because Bayada is not a "medical facility" within the meaning of the Act, and therefore it does not apply to them. Bayada points to Eaves-Voyles v. Almost Fam., Inc., to support this contention. 198 F. Supp. 3d 403 (M.D. Pa. 2016). In Eaves-Voyles, the court held

that MCARE did not extend the Pennsylvania Whistleblower Law's protections to the plaintiff because she did not work in a "medical facility" under MCARE. Id. at 409–410. Under § 308(c) of MCARE, "a health care worker who reports the occurrence of a serious event or incident ... shall have the protections and remedies set forth in the ... Whistleblower Law." § 1303.308(c). The reporting section of MCARE requires the report to be submitted "according to the patient safety plan of the medical facility. . ." Id. A medical facility is defined under MCARE as "an ambulatory surgical facility, birth center, hospital or abortion facility." Id. at § 1303.302. The plaintiff in Eaves-Voyles worked for the defendant in home health nursing services, and plaintiff did not allege that defendant operated one of the facilities listed under MCARE's definition of "medical facility." Accordingly, in Eaves-Voyles, MCARE did not extend the Pennsylvania Whistleblower Law's protections to the plaintiff, and her claim was dismissed.

Plaintiff asserts that Eaves-Voyles does not foreclose her claim because in Eaves-Voyles, the court considered whether MCARE extended the Pennsylvania Whistleblower Law's protections to the plaintiff. But here, according to Plaintiff, the issue is whether Bayada violated MCARE for purposes of a wrongful termination action. And Plaintiff presses that MCARE may apply to Bayada because under section 302 of MCARE, "health care worker" is defined as "[a]n employee, independent contractor, licensee or other individual authorized to provide services in a medical facility." § 1303.302. Plaintiff submits that she meets this criterion, and thus she has pled enough facts to establish that Bayada may have violated MCARE in connection with its alleged misconduct in handling the COVID-19 pandemic.

Plaintiff does not allege any facts in her Complaint to support the conclusion that Bayada is an "ambulatory surgical facility, birth center, hospital or abortion facility." § 1303.302. Rather, as evidenced by its own name, Bayada Home Health Care seems to be engaged in home health

5

services only. And Plaintiff does not explain how her allegedly falling under MCARE's definition of "health care worker" would somehow revive her claim, as the section of MCARE she cited in her Complaint still requires that the reporting of an incident be submitted "according to the patient safety plan of the *medical facility*." Id. (emphasis added). Accordingly, because Plaintiff has not plausibly alleged that Bayada is a medical facility under MCARE, Plaintiff cannot base her wrongful termination claim on a violation of that law. See Grim v. May Grant Assocs., No. 18-cv-2231, 2019 WL 358520, at *5 (E.D. Pa. Jan. 29, 2019) (dismissing PWL claim against defendant medical clinic based on violation of MCARE because Plaintiff did not plead any facts to suggest that defendant fell under MCARE's definition of "medical facility.").

### 2.  18 U.S. Code § 1001 (Fraud and False Statements) and 18 U.S. Code § 1035 (False Statements relating to Health Care Matters)

Plaintiff next alleges that her termination was in violation of two sections of the criminal code of the federal government. Specifically, 18 U.S. Code § 1001 (Fraud and False Statements), and 18 U.S. Code § 1035 (False Statements relating to Health Care Matters). Section 1001 punishes those who make fraudulent statements to federal agencies, which is not applicable here because it is not alleged that any false statements were made to a federal agency. Section 1035 states:

> (a) Whoever, in any matter involving a health care benefit program, knowingly and willfully—
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or
> (2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S. Code § 1035.

Bayada argues that Plaintiff cannot establish that they violated § 1035 when they sent out an email instructing their staff not to alert patients about the COVID-19 exposure. Bayada also presses that the Complaint does not allege that this directive "required Plaintiff *herself* to 'falsify, conceal, or cover up' or make 'any materially false, fictitious, or fraudulent statements or representations." (Def.'s Br. at p. 8, ECF No. 13) (emphasis in original). Accordingly, Bayada asserts that these allegations cannot support Plaintiff's wrongful termination claim.

Plaintiff responds that Bayada specifically instructed the nursing staff not to tell their patients about the exposure, and "this directive would have compelled Ms. Chiancone to conceal information and make fraudulent omissions to her patients in connection with her employment, and, in the event a patient asked whether anyone at Bayada had been exposed, it would have compelled Ms. Chiancone to make false and fraudulent statements to the patient." (Pl. Br. at p. 8, ECF 14-2.)

Bayada cites to several Pennsylvania state court cases in which wrongful termination claims were dismissed because the sources of public policy cited by the plaintiffs neither required certain conduct nor forbid it, and therefore no public policy within the Commonwealth was threatened by the plaintiff's termination. See Spierling v. First Am. Home Health Servs Inc., 737 A.2d 1250, 1254 (Pa. Super. 1999) (dismissing wrongful termination claim where nurse plaintiff was fired after reporting suspected evidence of Medicare fraud because none of the statutes plaintiff cited required her to report any alleged fraud); Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. 1998) (no wrongful termination claim where counselor plaintiff was fired after reporting rape of resident in her care because "Pennsylvania law, regulation[s] and her profession's code of ethics" did not impose an affirmative reporting duty upon her); McLaughlin v. Gastrointestinal Specialists, 750 A.2d 283, 288–289 (Pa. 2000) (dismissing wrongful termination

7

claim because OSHA regulation cited by plaintiff did not protect her activity of making an internal complaint to her employer). Bayada asserts that the reasoning in these cases is applicable here, and that Plaintiff's "unsubstantiated" assertions that Bayada violated various statutes is not enough to state a plausible claim for wrongful termination.

I find Allen v. Northeast Treatment Centers, Inc. to be instructive here. No. 20-cv-5519, 2021 WL 3015411, *1 (E.D. Pa. Jan. 8, 2021). In Allen, several nurses alleged that defendant fired them "after repeatedly complaining [that their] Director denied emergency care to patients who needed it and violated state and local orders relating to the COVID-19 pandemic." Id. Even though plaintiffs did not identify a specific order or health regulation that was threatened by their termination, the court found that "potential violations of medical ethical rules and practice protocols" combined with the "serious public health concern" posed by the global pandemic provided a sufficient public policy basis for their wrongful termination claim at the motion to dismiss stage. Id. The court noted that the Pennsylvania Supreme Court does not limit "public policy" to just policies that have been legislatively enacted, but "extends to a 'policy ... so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it.'" Id. (quoting Shick v. Shirey, 716 A.2d 1231, 1235-36 (Pa. 1998)).

I find that, at this early stage of the litigation, Plaintiff has successfully pled a wrongful termination claim based on potential violations of the multiple statutes and regulations cited in her Complaint. Bayada's alleged directive to its nursing staff not to alert patients that a staff member had been exposed to COVID-19 could be construed as Bayada requiring Plaintiff to conceal a material fact (a staff member's exposure to COVID-19 during a global pandemic) in connection with the delivery of health care services. This conduct, subject to a more fulsome examination

through discovery, may constitute a violation of § 1035 governing false statements related to healthcare matters.

I also find Spierling, Hennessy, and McLaughlin distinguishable because the statutes cited in all three of those cases did not actually require the plaintiffs to engage in the conduct that ultimately led to their termination. Here, § 1035 did not compel Plaintiff to do anything either, but it did explicitly forbid anyone involved in a healthcare benefit program from concealing or falsifying a material fact in connection with the delivery of healthcare services. And as the pandemic was just beginning at the time the alleged conduct occurred, there was "virtual unanimity of opinion" that in the interests of public health, healthcare workers were required to be transparent about exposures, particularly those who treat high-risk patients, which applies to Bayada. Importantly, and as Plaintiff noted in her brief, she is not required to prove that Bayada definitively violated the statutes and regulations cited as the bases for her wrongful termination claim at the motion to dismiss stage. See Averill v. Monarch Life Ins. Co., No. 87-cv-7722, 1988 WL 26484, at *2 (E.D. Pa. Mar. 11, 1988) ("These allegations may well yield public policy violations such as fraudulent hiring practices and need to be flushed out in the discovery process."). At this time, I find that Plaintiff has pled sufficient facts to plausibly allege her termination was in violation of public policy. Thus, Bayada's motion to dismiss Plaintiff's wrongful termination claim is denied.

### B. Pennsylvania Whistleblower Law Claim

Under the Pennsylvania Whistleblower Law ("PWL"), employers may not discharge or retaliate against an employee because they reported an instance of: (1) "wrongdoing" or "waste" by a "public body," or (2) "waste" by an "employer." 43 Pa. Stat. Ann. § 1423(a). Accordingly, Plaintiff may establish a claim under the PWL by alleging she made a report of "wrongdoing" or "waste" if Bayada qualifies as a public body under the Act, but if Bayada qualifies as an

"employer," she can only establish a claim by alleging she reported "waste."  Bayada moves to dismiss Plaintiff's claim under the PWL because: (1) Bayada is not a "public body" under the PWL; (2) Bayada is not an "employer" under the PWL; and (3) Plaintiff has not established that she reported an instance of "waste" under the PWL.

        **1.**        **Is Bayada a "Public Body?"**

I must first determine whether Bayada qualifies as a "public body" under the PWL.  The PWL defines "public body" as: "[a] State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government ... [or] any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." 43 Pa. Stat. Ann. § 1422.  The United States Court of Appeals for the Third Circuit has found that "a private entity does not qualify as a public body merely because it receives state funds through contracts with public programs or government agencies." Lomaskin v. Siemens Medical Solutions USA, Inc., 820 Fed. Appx. 138, 141 (3d Cir. 2020).  Thus, Plaintiffs asserting claims under the PWL must plead that the entity receives money "specifically appropriated by a governmental unit." Id.

In her Complaint, Plaintiff alleges that Bayada "receives funding from the government, and is a public body as defined by the [PWL] . . ." (Compl. at ¶ 18.)  In her brief, Plaintiff argues that "[d]iscovery is necessary to determine the source and nature of such funding." (Pl. Br. at p. 16.)  Bayada contends that these generic and conclusory allegations are insufficient to establish that it is a public body, and that the PWL clearly contemplates limiting "public body" to Commonwealth agencies or bodies of government only.  Bayada further asserts that, to the extent

Plaintiff bases her PWL claim on Bayada's receipt of Medicare and Medicaid funds, that is insufficient to qualify an entity as a "public body." Eaves-Voyles, 198 F. Supp. 3d at 409.

Plaintiff's allegations regarding Bayada's status as a public body are insufficient to state a claim under the PWL.  The bare allegation that Bayada receives "funding from the government," without more detail, is conclusory.[2]  And, even if Bayada receives funding from the government in the form of Medicare and Medicaid, that is still not enough to render it a "public body" under the PWL.  See Grim, 2019 WL 358520 at *5 (dismissing PWL claim where plaintiff alleged "only that Defendants are the 'recipients of Medicare and/or Medicaid and potentially other sources of public funding for the provision of medical services.'").

### 2. Is Bayada an "Employer?"

If Bayada is not a "public body" under the PWL, it must qualify as an "employer" in order for Plaintiff's PWL claim to survive a motion to dismiss.  The PWL defines "employer" as "[a] public body or any of the following which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body: (1) [a]n individual; (2) [a] partnership; (3) [a]n association; (4) [a] corporation for profit; (5) [a] corporation not for profit."  43 Pa. Stat. Ann. § 1422.

Here, Plaintiff encounters the same problem she had with her argument above regarding Bayada's status as a public body.  Plaintiff's conclusory allegations that Bayada "receives government funding from the Commonwealth," without more, is insufficient to establish that

---

[2]     Plaintiff cites Arner v. PGT Trucking, Inc., No. 09-cv-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010), to argue that she has pled enough facts to survive a motion to dismiss, and that the source and nature of the funding Bayada receives can be fleshed out in discovery.  I find this case distinguishable because the plaintiff in Arner alleged more facts regarding the source of the funding defendant received from the government. See id. (denying motion to dismiss PWL claim where plaintiff alleged that defendant was a public body because it received "economic development grants, job creation tax credits and job training assistance.").

11

Bayada is an "employer" that receives funding from a public body. Plaintiff must provide more than "threadbare recitals of the elements" of a PWL claim to survive a motion to dismiss. Iqbal, 556 U.S. at 663.

Courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint, unless amendment would be futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Accordingly, I will provide Plaintiff the opportunity to amend her Complaint to include more facts, if they can be alleged in good faith, regarding the source of funds Bayada receives that she alleges qualifies it as either a "public body" or an "employer" under the PWL.[3]

## IV. CONCLUSION

For the foregoing reasons, Bayada's motion to dismiss will be granted in part and denied in part.

An appropriate Order follows.

---

[3] Because I find that Plaintiff has failed to establish that Bayada qualifies as a "public body" or an "employer" under the PWL, I will not address the parties' arguments regarding whether Plaintiff has established that she reported "waste" under the PWL.